```
 1                      UNITED STATES DISTRICT COURT

 2                      WESTERN DISTRICT OF NEW YORK

 3


 4


 5   - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA            19-CR-6159(G)
 6
     vs.
 7                                       Rochester, New York
     FELIX FIGUEROA,                     January 24, 2020
 8              Defendant.               9:25 a.m.
     - - - - - - - - - - - - - -X
 9

10
                         TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE FRANK P. GERACI, JR.
                 UNITED STATES DISTRICT CHIEF JUDGE
12


13


14                      JAMES P. KENNEDY, JR., ESQ.
                        United States Attorney
15                      BY: CASSIE KOCHER, ESQ.
                        Assistant United States Attorney
16                      500 Federal Building
                        Rochester, New York 14614
17


18
                        D. SCOTT YOUNG, ESQ.
19                      150 Allen Creek Park
                        Rochester, New York 14618
20                      Appearing on behalf of the Defendant

21   ALSO PRESENT:      Jesus Barberia, Spanish Interpreter
                        Jennifer Fish, U.S. Probation Office
22


23
     COURT REPORTER:    Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
24                      (585) 613-4310
                        Kenneth B. Keating Federal Building
25                      100 State Street, Room 2120
                        Rochester, New York 14614
```

```
 1                    P R O C E E D I N G S
 2                     *        *        *
 3              (WHEREUPON, the defendant is present).
 4              THE COURT: Good morning.  Please swear in the
 5    interpreter.
 6              (WHEREUPON, the interpreter was sworn).
 7              THE COURT: Are you Felix Figueroa?
 8              THE DEFENDANT: Yes, sir.
 9              THE COURT: Appear with your attorney Mr. Young.
10    Ms. Kocher appears on behalf of the Government.
11              This matter's on for sentencing.  The Court has
12    received the presentence report; also received a statement by
13    the Government; a statement by the defendant, with a number of
14    letters from a number of family members, from the defendant as
15    well.
16              First of all, does the Government have any
17    objections to the presentence report?
18              MS. KOCHER: No, Your Honor.
19              THE COURT: Does the defense have any objections?
20              MR. YOUNG: No objection.  I just noticed this
21    morning, Your Honor, one correction.  Our firm name changed,
22    that's all.  So Mr. Peters is no longer with us, but I don't
23    think that really is relevant.
24              THE COURT: Based upon that the Court will adopt the
25    presentence report.
```

                    Would you like to be heard, Ms. Kocher?

                    **MS. KOCHER:** Yes, Your Honor, just briefly.  I would ask that the Court sentence the defendant pursuant to the plea agreement to 96 months imprisonment and five years of supervised release.

                    I did have a chance to review the defendant's submissions.  It appears he does have significant family support, and much of the letters mentioned how he is an integral part of the family.  However, I think that is an appropriate sentence given the nature of the offense and the defendant's criminal history.

                    As the Court is aware, he pled guilty to possessing fentanyl with the intent to distribute, and the impact of fentanyl in our community has been in the news for years at this point and the impact on victims that have suffered with addiction and their families is obviously very significant.

                    Also at the time of this offense the defendant was on parole supervision for a weapons offense, and he does have a rather significant criminal history.  So I would ask that the Court impose a sentence of 96 months and five years of supervised release.  Thank you.

                    **THE COURT:** Thank you.  Mr. Young.

                    **MR. YOUNG:** Good morning, Your Honor.  First I would ask the record reflect that my client's wife and children are present in the courtroom.

                I would be asking the Court to sentence
Mr. Figueroa pursuant to the plea agreement to 96 months, and
I would be requesting a four year term of supervised release.
                We don't dispute that these allegations occurred
while he was on parole supervision.  Just note for the Court
that when he's been incarcerated, there were no reports of any
violations within the correctional facilities, whether it be
federal or state.
                He's expressed to me on numerous occasions over the
last couple years that this is it for him.  He has, like I
think I tried to explain like he did to me, what he did was
trying to get easy money and realizes not only does it hurt
the community, it also has a devastating impact upon his
family, for which he understands he's going to have to serve a
punishment, Your Honor.
                So I would ask the Court to sentence him to a four
year term of post-release supervision.  Thank you, Your Honor.
                **THE COURT:** Thank you, Mr. Young.  Mr. Figueroa,
would you like to be heard at this time?
                **THE DEFENDANT:** Yes.  I would like first to ask
forgiveness to my family.  And I know I made them cry.
                I will love to go door by door to the community and
ask for forgiveness because I know what I did was wrong.  I
know because of the news that these made a lot of broken
families.

```
 1                   And I am very conscious that I need to pay for what
 2   I did, and I'm here to face the consequences of my acts.  My
 3   more sincere perdon.
 4                   And I not mad with the lady near me because she's
 5   doing her job right now.  I did -- I am -- put myself in the
 6   position I am right now and I'm accepting responsibility for
 7   that.
 8                   Please pardon me, my more sincere apologies. And to
 9   my family, that I love them a lot.
10                   THE COURT: Anything else?
11                   THE DEFENDANT: No.
12                   THE COURT: Okay, thank you, Mr. Figueroa.
13                   Mr. Figueroa, I did have a chance to review the
14   submissions both by the Government and by your attorney, who
15   did include a number of letters from family members -- of
16   course your wife and a number of children, and they're
17   heartbreaking in a sense that it appears that you're trying to
18   lead them down the right path, but you were on the wrong path
19   yourself.
20                   They indicated that you did at least encourage them
21   to go to school, complete school, do the right things.  And so
22   I commend you for that.  But you haven't really been the right
23   example up until now.  There's no reason why you can't change.
24                   Mr. Young's indicated he's seen a change in you
25   over the last two years while you're in custody.  I accept
```

         1  that.  Everybody that stands in front of me says pretty much
         2  the same thing:  You'll never see me again, sorry for what I
         3  did.  But the difference is what people actually do, not what
         4  they say.
09:31:59AM  5          You have work to do that and I'm confident you'll
         6  do that.  You're only 40 years of age.  There's only two ends
         7  to this if you continue along this path, and that is lifetime
         8  in prison or the cemetery.  And you know that because you
         9  already were a victim of a shooting; is that right?
09:32:23AM 10          **THE DEFENDANT:** Mm-hmm.
        11          **THE COURT:**  In fact, your entire family was shot.
        12  How many were shot and when did this happen?
        13          **THE DEFENDANT:** I do not remember the exact date.  I
        14  believe it was 2007, 2008.  I was a victim of a collateral
09:32:48AM 15  shooting.  We were bystanders in the middle of a shooting.
        16          **THE COURT:** You were shot?
        17          **THE DEFENDANT:** Yes, on my arm.
        18          **THE COURT:** Your wife was shot?
        19          **THE DEFENDANT:** Her hands.
09:33:06AM 20          **THE COURT:** Your daughter was shot?
        21          **THE DEFENDANT:** Yes, yes, sir.
        22          **THE COURT:** Where was she shot and how old was she?
        23          **THE DEFENDANT:** On her face.  She's here.  She was
        24  five or six years old.
09:33:20AM 25          **THE COURT:** And who else was shot?

```
 1                THE DEFENDANT: My other two kids were not impacted,
 2   thank God.
 3                THE COURT: They were not shot?
 4                THE DEFENDANT: No.
 5                THE COURT: That didn't have anything to do with
 6   drugs?
 7                THE DEFENDANT: No, no.
 8                THE COURT: At all?
 9                THE DEFENDANT: No.  We were bystanders passing by.
10                THE COURT: Where was this?
11                THE DEFENDANT: Avenue A I think.  We were going to
12   Tops, there was a problem on the streets, we were passing by.
13                THE COURT: Okay.  Was anyone else shot besides your
14   family?
15                THE DEFENDANT: Only my family.  Apparently the
16   person who was the victim of the shooting was never caught.
17                THE COURT: Okay.  Now all four of your brothers,
18   are they in jail as well?
19                THE DEFENDANT: Yes, my three brothers.
20                THE COURT: Three brothers.  All right, the reason
21   why I bring this up is because the background you have is
22   dangerous and hopefully you're teaching your children and your
23   nephews and your nieces, who all have letters here attached,
24   that this is not the way to live.
25                If it is, if they decide to go that path, they're
```

going to wind up in jail, too.

Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Or subject to a violent act. This was a serious, serious matter. You were possessing with intent to distribute fentanyl. Fentanyl is killing people in this community, it's clearly destroying lives, individuals, families and communities. So it was a serious matter.

On the other hand, if you decide and elect to get involved in programs, you can go in a new direction. So far you haven't done much to show that, being convicted once before in this court of the same thing, conspiracy to distribute cocaine; and then a felony weapons possession 2010, sentenced to imprisonment, then parole, violated parole, and this offense occurred while you were on parole.

So if I'm skeptical, that's why. Do you understand? But I hope I'm wrong.

In this case the defendant, Felix Figueroa, pled guilty to possession with intent to distribute fentanyl. He's been in custody some 23 months. He's 40 years of age. Has no high school diploma or GED. Is a United States citizen.

This investigation began related to his brother Carlos who was the leader of a drug trafficking organization shipping multi-kilos of cocaine from Puerto Rico to the Rochester area.

1    The investigation disclosed that his brother Felix,
2 this defendant, was operating his own separate operation on a
3 large scale.  There were a number of undercover purchases of
4 cocaine August 2017 and December 2017, some five separate
5 undercover purchases of cocaine, heroin.
6    A search warrant was executed at his house.
7 Discovered by investigators was fentanyl, heroin, cocaine,
8 Mannitol, which is a substance you mix controlled substances
9 with, scales, United States currency and a ledger.
10    The base offense level for this charge is a level
11 24.
12    With a level two increase for maintaining a
13 premises.
14    Two level increase for the defendant playing an
15 aggravating role by being a leader or organizer of the drug
16 activities.
17    Three level downward adjustment for his acceptance
18 of responsibility by his plea of guilty, his acknowledgment of
19 his involvement in this offense, resulting in a total offense
20 level of 25.
21    His criminal history category is a level IV.  He
22 has a 2004 conviction for conspiracy to possess with intent to
23 distribute cocaine in this court, the Western District of
24 New York.  He received 37 months imprisonment.
25    In 2010 he was convicted of state charges, criminal

     1  possession weapon second degree, criminal possession weapon
     2  third degree, both felonies, sentenced to five years
     3  imprisonment.
     4           Upon parole was -- his parole was revoked and this
     5  offense occurred while he was under parole supervision.
     6           The defendant was born in Puerto Rico.  He has four
     7  brothers, all of whom have criminal records.
     8           As the defendant indicated, he was shot in an
     9  incident along with a number of family members a few years
    10  back.
    11           Does not appear to have any mental health issues.
    12  Did at one point at the age of 17 use alcohol; was deemed at
    13  one point to be cannabis dependent, although apparently he's
    14  been sober for a number of years.
    15           He attended the third grade in Puerto Rico.  Did
    16  complete a program while in the Bureau of Prisons.
    17           With a total offense level of 25, criminal history
    18  category IV, sentencing range in this case would be 84 to 105
    19  months imprisonment.
    20           In this case based upon the defendant's previous
    21  felony conviction for a drug offense, if an information was
    22  filed under Section 851 he would be looking at a minimum of 10
    23  years up to life imprisonment.  The current charge calls for a
    24  minimum of five years with a maximum sentence of 40 years
    25  imprisonment.

                    This is an agreement under Rule 11(c)(1)(C) which
the parties have recommended that the sentence in this case be
96 months imprisonment.  The Court finds that based upon all
the facts and circumstances that is a reasonable sentence.
                    Obviously we discussed, Mr. Figueroa, the
seriousness of the offense in this case, your background, and
character.
                    It must be a sentence not greater than necessary to
accomplish purposes of sentencing, but one that deters you and
others from engaging in this activity in the future.
                    Based upon all that the Court finds that a period
of 96 months imprisonment is the appropriate sentence, and
it's the sentence of the Court that Felix Figueroa be
sentenced to 96 months to the Bureau of Prisons.
                    Does he want to be housed near Rochester,
Mr. Young?
                    **MR. YOUNG:** Yes, Your Honor.
                    **THE COURT:** He be housed as close to Rochester, New
York as possible so he can have the availability of his
family, which is very much in support of him.
                    That's to be followed by four years of post-release
supervision with a number of conditions, including that the
defendant not violate any federal, state or local laws.
                    He's prohibited from possessing a firearm,
ammunition or dangerous device.

 1                He shall not possess a controlled substance unless
 2   prescribed by a physician.
 3                He must submit to drug testing.
 4                He shall cooperate in the collection of a DNA
 5   sample.
 6                He shall participate in a program for substance
 7   abuse, including substance abuse testing such as urinalysis
 8   and other testing.
 9                He shall undergo a drug and alcohol evaluation and
10   treatment if substance abuse is indicated by the testing.
11   Probation will supervise the details of any testing and
12   treatment, including the selection of a treatment provider and
13   a schedule.  If inpatient treatment is recommended, that must
14   be approved by the Court unless the defendant consents.  He's
15   not to leave treatment until completion or is ordered by the
16   Court.
17                While in treatment and after discharge from
18   treatment the defendant is to abstain from the use of alcohol.
19                The defendant is required to contribute to the cost
20   of services rendered.
21                He shall submit to a search of his person,
22   property, vehicle, or residence upon reasonable suspicion and
23   permit confiscation of any evidence or contraband that may be
24   discovered.
25                The Court is not going to impose any fine in this

case based upon the defendant's inability to pay.

The Court will impose a special assessment of $100.

Is there any forfeiture in this case?

**MS. KOCHER:** Judge, I don't believe so. I know there was money recovered and that wasn't part of the plea agreement. I can't quite recall what --

**THE COURT:** Special assessment of $100 shall be due immediately. Any payment shall be paid through the Bureau of Prisons Financial Responsibility Program.

Anything further from Probation?

**MS. FISH:** No, Judge. Thank you.

**THE COURT:** The Government?

**MS. KOCHER:** No, thank you.

**THE COURT:** Mr. Young?

**MR. YOUNG:** No, Your Honor.

**THE COURT:** Mr. Figueroa, I do notify you of your right to appeal. In this case the Court did impose a sentence in accordance with the plea agreement, particularly the Rule 11(c)(1)(C) agreement, therefore, you waived your right to appeal the sentence or attack the sentence.

However, if there are any other issues, you need to talk to Mr. Young about that.

Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Mr. Figueroa, it's important you get

1  involved in as many programs as possible while you're in
2  custody.  You don't have your GED; is that right?
3          **THE DEFENDANT:** No, sir.
4          **THE COURT:** There's no reason why you can't secure
5  that.  You can show that you're headed in the right direction
6  by doing that, being involved in programs, including
7  vocational programs, any treatment programs as well so when
8  you come out you can be a role model for your children.  At
9  that point hopefully turn in a new direction.  I certainly
10 hope that's the case.
11         **MS. KOCHER:** Judge, I would move to dismiss the
12 complaint 18-MJ-528.
13         **THE COURT:** Yes, the underlying criminal complaint
14 as to this defendant will be dismissed.
15         **MS. KOCHER:** Thank you.
16         **THE COURT:** Thank you.
17         **MR. YOUNG:** Your Honor, another request I had based
18 upon conversation with my client, in the presentence report is
19 the opportunity to engage in drug treatment programs while
20 he's in the Bureau of Prisons.  I think that would be
21 beneficial.
22         **THE COURT:** I guess I was a little confused in that
23 this indicated he's been sober for ten years.
24         **MR. YOUNG:** I think based on my conversation with
25 him there is perhaps an underlying issue with marijuana and

1  stuff, but I also think those programs not only assist people
2  with whatever triggers there are to use controlled substances
3  and alcohol, but they also help educate them about the impact
4  it has not only on them, but also their families.
5  **THE COURT:** I have no objection to his being
6  referred to any programs he may be eligible for.  I think the
7  weapons charge may be an obstacle for him.
8  But, in any event, I certainly don't have any
9  objection to that.  I think it could get Mr. Figueroa back on
10 the right track.  So good luck.  Thank you.
11 **MR. YOUNG:** Thank you, Your Honor.
12 **THE COURT:** You're welcome.
13 (**WHEREUPON**, proceedings adjourned at 9:45 a.m.)
14                              *   *   *
15                        **CERTIFICATE OF REPORTER**
16
17      In accordance with 28, U.S.C., 753(b), I certify that
18 these original notes are a true and correct record of
19 proceedings in the United States District Court for the
20 Western District of New York before the Honorable Frank P.
21 Geraci, Jr. on January 24th, 2020.
22
23 S/ Christi A. Macri
24 Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
   Official Court Reporter
25